# In the United States Court of Federal Claims

No. 03-2263C
Filed: October 31, 2006
TO BE PUBLISHED

*****************************************

|  |  |
|---|---|
| * | Contract Disputes Act, 41 U.S.C. §605; |
| DEMARCO DURZO DEVELOPMENT CO.,    * | Computation of Time, RCFC 6; |
| * | Federal Rule of Civil Procedure 6; |
| Plaintiff,    * | Material Facts; |
| * | Motion for Reconsideration, |
| v.    * |    RCFC 59; |
| * | RESTATEMENT (SECOND) OF CONTRACTS |
| THE UNITED STATES,    * |    (1981) §§ 201(1), 202(1); |
| * | WILLISTON ON CONTRACTS (4th ed.) §§ 34:6, |
| Defendant.    * |    72:1. |
| * |  |

*****************************************

**K. Bradley Mellor and Rochelle R. Koerbel**, Bluming & Gusky, L.L.P., Pittsburgh, Pennsylvania, Counsel for Plaintiff.

**Andrew P. Averbach**, United States Department of Justice, Civil Division, Commercial Litigation Branch, Counsel for Defendant, **Robert J. McCall**, United States General Services Administration, Regional Counsel, Of Counsel.

**MEMORANDUM OPINION AND ORDER REGARDING
THE GOVERNMENT'S MOTION FOR RECONSIDERATION**.

## I.    SUMMARY OF RELEVANT FACTS.

The dispute in this case involves the termination of Lease No. GS-03B-40056 ("lease"), under which Plaintiff leased office space to the General Service Administration ("Government" or "GSA") for use by the Internal Revenue Service ("IRS"). The original lease, executed on October 2, 1984, was for a ten-year term, beginning January 1, 1985 and ending December 31, 1995, but contained a termination provision allowing the IRS to terminate the lease, without penalty, under certain conditions:

> The Government may terminate this lease at any time after 5th year by giving at least 60 days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination. *Said notice shall be computed commencing with the day after the date of mailing.*

*DeMarco Durzo Dev. Co.* v. *United States*, 69 Fed. Cl. 262, 264 (2005) (emphasis added) ("*DeMarco Durzo II*").

Between 1985 and 2000, the parties entered into thirteen Supplemental Lease Agreements ("SLAs") amending the original lease.[1] The original lease did not contain a renewal option, but SLA No. 5, executed on December 4, 1992, added two five-year renewal options, providing the Government with an option to extend the term of the lease up through December 31, 2000:

> Two (2) five (5) year renewal option at the current rental rate plus accrued escalation provided notice be given in writing to the Lessor at least ninety (90) days before the end of the original lease term or any renewal term; all other terms and conditions of this lease shall remain the same during any renewal term. *Said notice shall be computed commencing with the day after the date of the mailing.*

*Id*. at 267 (emphasis in original).

On October 4, 1994, the Government exercised this option by SLA No. 9:

> The Government exercises one (1) renewal option with one (1) renewal option remaining. The remaining option shall be at the current rental rate plus accrued escalation, provided notice be given in writing to the Lessor at least ninety (90) days before the effective date of the renewal. All other terms and conditions of this lease shall remain the same during any renewal term. *Said notice shall be computed commencing with the day after the date of mailing.*

*Id*. at 267-68 (emphasis added).

On September 25, 1996, the parties executed SLA No. 10, adding two additional renewal options, thereby giving the Government a total of three, five-year renewal options. *Id*. at 268. SLA No. 13, executed on March 1, 2000, exercised one of these additional options, extending the term of the lease to December 31, 2005. *Id*.

On March 25, 2003, the GSA issued an Official Notice of Termination advising that:

> In accordance with the provisions of the lease, the lease will terminate 60 days from the date of this letter being mailed. All items will be removed from the space prior to that date and the space returned to you in a broom clean condition.

*Id*. Pursuant to this notice, the Government ceased utilizing Plaintiff's property prior to the expiration of the sixty-day notice period. *Id*. The Government made a final rent payment in July 2003, covering the period through June 2003. *Id*. at 268-69.

---

[1] None of the thirteen SLAs executed by the parties altered the termination provision of the original lease. *See DeMarco Durzo II*, 69 Fed. Cl. at 268.

**II      RELEVANT PROCEDURAL BACKGROUND.**

On September 30, 2003, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging claims for: breach of contract (Count I), estoppel (Count II), and a taking of private property for public use (Count III).  *Id*. at 269.

On January 12, 2004, the Government, filed a Motion to Dismiss, pursuant to RCFC 12(b)(6).  On February 12, 2005, Plaintiff filed a Brief in Opposition.  On March 1, 2005, the Government filed a Reply.  On May 20, 2005, the court issued a Memorandum Opinion and Order granting, in part, the Government's January 12, 2004 Motion to Dismiss, dismissing Count II because Plaintiff failed to state a claim on which relief can be granted by not alleging the requisite elements to support an estoppel claim.  *See DeMarco Durzo Development Co.* v. *United States*, 60 Fed. Cl. 632, 639 (2004) ("*DeMarco Durzo I*").

On July 15, 2005, the Government filed a Motion for Summary Judgment as to Counts I and III and Plaintiff filed a Motion for Partial Summary Judgment regarding the same.  On August 14, 2005, the Government filed an Opposition to Plaintiff's Motion for Summary Judgment and Plaintiff filed a Brief in Opposition to Defendant's Motion for Summary Judgment.  On September 15, 2005, the Government filed a Reply to Plaintiff's Opposition.  Plaintiff did not file a Reply.  On December 29, 2005, the court issued a Memorandum Opinion and Order granting in part, the Government's Motion with respect to Count I for the period up to and including June 2003 and Count III for the period up to and including May 25, 2003.  *See DeMarco Durzo II*, 69 Fed. Cl at 276.  Plaintiff's Motion for Partial Summary Judgment was denied.  *Id*.

On January 12, 2006, the Government filed a Motion for Reconsideration ("Gov't Mot. Recons.") of the December 29, 2005 Memorandum Opinion and Order with respect to Count I.  On August 1, 2006, Plaintiff filed a Brief in Opposition ("Pl. Opp.").

**III.    DISCUSSION.**

   **A.    Jurisdiction.**

Pursuant to the Contract Disputes Act, the United States Court of Federal Claims has jurisdiction to adjudicate a breach of contract claim, however, the plaintiff must exhaust available administrative remedies by first seeking and obtaining a formal decision from the responsible Contracting Officer.  *See* 41 U.S.C. § 605(a).  In addition, where, as here, a claim for breach of contract against the Government exceeds $100,000, a certification is required to affirm that: (1) the claim is made in good faith; (2) the supporting data is accurate and complete to the best of the certifier's knowledge; (3) the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and, (4) the certifier is duly authorized to certify the claim on behalf of the contractor.  *See* 41 U.S.C. § 605(c)(1).

In the December 29, 2005 Memorandum Opinion and Order, the court determined that Plaintiff had not complied with the requirements of 41 U.S.C. § 605. *See DeMarco Durzo II,* 69 Fed Cl. at 270. The court, however, also determined that this procedural deficiency did not deprive the court of jurisdiction because: "[a] defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim," provided that "[p]rior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected." *Id*. (citing 41 U.S.C. § 605(c)(6)). In order to meet the statutory requirements, the court granted Plaintiff thirty days from the filing of the December 29, 2005 Memorandum Opinion and Order to correct the certification deficiency. *Id*. at 276 ("Plaintiff . . . will be afforded 30 days to correct the certification deficiency previously discussed."). To this date, Plaintiff has failed to correct the certification deficiency.

**B.      Standard For Reconsideration.**

United States Court of Federal Claims Rule ("RCFC") 59 provides that "reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The decision to grant a motion for reconsideration is within the court's discretion. *See Yuba Natural Res., Inc.* v. *United States,* 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court"). To prevail, the moving party must identify a manifest error of law or mistake of fact. *See Coconut Grove Entm't, Inc.* v. *United States,* 46 Fed. Cl. 249, 255 (2000) (holding that a movant must "point to a manifest error of law or mistake of fact").

**C.      The Government's Motion For Reconsideration Is Granted.**

**1.      The Government's Motion For Reconsideration.**

The court's December 29, 2005 Memorandum Opinion and Order granted Defendant's July 15, 2005 Motion for Summary Judgment with respect to Count I and Count III of the Complaint. The Government's Motion for Reconsideration only requested reconsideration of the court's ruling on Count I, *i.e.* regarding a one day discrepancy between termination notice and the notice period contemplated by the lease. S*ee* Gov't Mot. Recons. at 2-6. The termination notice stated that "the lease will terminate 60 days *from the date of this letter being mailed,*" while the lease provided that the sixty-day notice period  "shall be computed commencing with *the day after the date of mailing*." *DeMarco Durzo II,* 69 Fed. Cl. at 274. Accordingly, the court held that the termination notice effectively stated a notice period one day shorter than that specified in the lease. *Id*. at 274-75. The court, however, did not hold the Government's termination notice invalid. As the court observed, circumstances may exist, such as scrivener's error, acceptance by the parties, or mistaken belief by the parties, that could render the notice effective. *Id*. at 275. In the December 29, 2005 Memorandum Order and Opinion, however, the court implicitly made the factual determination that the March 25, 2003 termination letter recited a notice period ending on May 23, 2003. *Id*. at 274 ("The bottom line is that the CO's [March 25, 2003] letter seeks to initiate the running of required 60 day early termination notice a day earlier that provided for in the Lease."). In effect, the court

held that the letter's description of the termination period – "the lease will terminate 60 days *from the date of this letter being mailed*," – implies a termination date of May 23, 2003 because "from the date" indicates that the notice period commences on the March 25, 2003 mailing date and therefore day one is March 25, 2003.

The Government's basis for reconsideration is that "*from* the date" should be construed so that day one is March 26, 2003, because that date is one day *from* the March 25, 2003 mailing date.[2] *See* Gov't Mot. Recons. at 2-3. In support, the Government cites a General Service Board of Contract Appeals ("GSBCA") case, that involved a lease termination provision nearly identical to the one at issue here. *Id.* (citing *Grant African Methodist Episcopal Church* v. *General Services Administration*, GSBCA No. 16135, 2003 WL 22411424, slip op. at 9 (Oct 16, 2003)). In *Grant*, the GSBCA did not dispute the GSA's acknowledgment that it owed rent "through the sixtieth day *after*" the date GSA mailed notice to the lessor. *See Grant*, slip. op. at 9 (emphasis added). In addition, the Government also argues that Rule 6 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and Rule 6 of the Rules of the United States Court of Federal Claims ("RCFC") both employ the same counting methodology. *Id*. at 3. In the alternative, the Government suggests that, in this situation, "the proper remedy for any miscalculation of the effective date of a termination notice is to require payment through the [correct termination date], rather than to treat the exercise as an unaccepted offer." *Id*. The Government argues that the cases relied upon by the court in holding the termination notice did not comply with precise terms of the contract are distinguishable, because those cases involved options to "secure *additional* performance out of its contracting partner," instead of options to terminate the obligation of performance. *Id*. at 4 (emphasis in original). Therefore, the Government claims that it should not be held liable for the single additional day, because it had already paid rent for all of July 2003.

### 2.    Plaintiff's Opposition.

Plaintiff argues that the court's December 29, 2005 Memorandum Opinion and Order merely recognized that a question of material fact remains unresolved: "whether or when the Government exercised the early termination option." Pl. Opp. at 2 (citing *DeMarco Durzo II*, 69 Fed. Cl. at 275). Therefore, Plaintiff concludes that the Government cannot use a Motion for Reconsideration to explain away the apparent difference between the exact terms of the lease and the language used in the CO's March 25, 2003 Termination Notice. *Id*. at 3.

### 3.    The Court's Resolution.

There is no dispute that May 24, 2003 is the termination date, as defined in the lease. The contested issue is whether May 23, 2003, as the court determined, or May 24, 2003, as the

---

[2] The Government mistakenly cited March 23, 2003 as the date of mailing in the Motion for Reconsideration. *Compare* Gov't Mot. Recons. at 2 ("[T]he contracting officer's [termination] letter [was] dated March 23, 2003[.]"), *with DeMarco Durzo II*, 69 Fed. Cl. at 268 ("On March 25, 2003, the CO issued an 'official Notice of Termination by the Government for the [Monroeville, Pennsylvania] lease[.]'").

Government argues, is the termination date mandated by the language of the letter. The Government's citations to RCFC 6 and Fed. R. Civ. P. 6 have no bearing on substantive contract interpretation. Neither is the relevance of *Grant* apparent. To the extent that the GSA Board of Contract Appeals described the notice period as "through the sixtieth day *after*," rather than "60 days *from*," there is nothing in *Grant* that suggests "after" and "from" are synonymous. *See Grant*, slip op. at 9-10.

The court's independent research has, however, found authority to support the proposition that when computing a time period relative to an act, the general rule—at least as applied to the interpretation of contracts and statutes—is that the date of the act is not to be included. As the Supreme Court observed nearly a century and half ago:

> The general current of the modern authorities on the interpretation of contracts, and also of statutes, where time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period *from* or *after* a day named, is to exclude the day thus designated, and to include the last day of the specified period.

*Sheets* v. *Selden's Lesee*, 69 U.S. (2 Wall.) 177, 190 (1864) (emphasis in original); *see also Best* v. *Polk*, 85 U.S. (18 Wall.) 112, 119 (1873) (stating that "[t]he word 'from' always excludes the day of date," in holding valid a certificate issued on "2d March, 1849," by an officer who "was commissioned to hold the office . . . 'during the term of four years from the 2d day of March, 1845'"). This "day-of-the-act-excluded" rule is also discussed in WILLISTON ON CONTRACTS:

> By the "trend of modern authorities, whatever may have been the rule in earlier times, the day on which an act or event occurs is excluded [and the last day is included] in the determination of all questions of time. The rule relates to actions in tort, as well as in contract, and to questions arising under the statute of limitations."

SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 79:12 (4th ed. 2006) ("WILLISTON").

The court has been unable to locate a case where the United States Court of Appeals for the Federal Circuit expressly has adopted a "day-of-the-act-excluded" rule or a case where a holding turned on the difference of a single day. On the other hand, there are precedential opinions where an interval of time is described as some number of days "*from*" an act, and it is clear that a litigant or the government has not included the date of the act when computing the ending date of the interval. For example, in *Munson* v. *Merit Systems Protection Bd.*, 318 F.3d 1358 (Fed. Cir. 2003), the United States Court of Appeals for the Federal Circuit, in reviewing a determination by the Merit System Protection Board ("MSBP") as to the timeliness of a petition, stated:

> The Board then held that the [March 5, 1995] grant of the within-grade increase was the trigger for the *start* of the thirty-day appeal period. The Board concluded that an

6

>   appeal should have been filed on or about April 9, 1995, or *thirty days from the date of the granted within-grade increase plus five days for mailing*.

*Id*. at 1361 (emphasis added).  In that case, the thirty-five day appeal period would end on April 9, 1995 only if the day after the date of the within-grade increase, March 6, 1995, is counted as day one.  Clearly, in calculating the April 9, 1995 deadline, the MSPB followed the "day-of-the-act-excluded" rule.  The Federal Circuit, however, did not rely on that rule, nor was any question raised regarding MSPB's computing method.  *Id*.

The court also has observed that when computing time periods, our appellate court does not distinguish between language reciting a number of days "*from* a date of mailing" and language reciting a number of days "*after* a date of mailing."  For example, in *Mondero* v. *Nicholson*, 129 F. App'x 605 (Fed. Cir. 2005), after quoting from VA Form 459: "'A Notice of Appeal must be filed with the [Veterans Court] within *120 days from the date of mailing* of the notice of the [Board's] decision,'" the Federal Circuit states, "Ms. Mondero's motion for reconsideration was filed on February 9, 2000, *more than 120 days after the filing date*."  *Id*. at 605 (additions in original) (emphasis added).  Thus, the interchangeable use of "from" and "after" suggests that the United States Court of Appeals for the Federal Circuit views "from" and "after" as synonymous when used to determine a time interval relative to the date of an act.

Although there is precedential authority for applying a "day-of-the-act-excluded" rule in the context of contract interpretation, a termination letter is not a contract.  A significant difference is that the interpretation of contracts is a question of law, whereas the effect of a termination notice is a factual question.  *See Minidoka Irrigation Dist.* v. *Dept. of Interior*, 154 F.3d 924, 927 (9th Cir. 1998) (holding that assessing whether the conduct of the Department of the Interior, including mailing three letters to plaintiff, was sufficient to repudiate a contract is a question of fact).  In this case, Plaintiff relies on this distinction in arguing that the ambiguity created by the language of the March 25, 2003 letter creates a question of material fact.  *See* Pl. Opp. at 2.  In the interpretation of the termination letter, it is the party's intention that is controlling, and the language of the letter is only relevant to the extent that it expresses that intent.  As a result, the "day-of-the-act-excluded" rule is relevant to the extent that it evidences the intent of the GSA to terminate the lease.

In this case, the GSA prepared the termination letter to exercise a specific contract provision.  This raises a presumption that the parties would have expected an interpretation of the language in accord with the contract.  *See* RESTATEMENT (SECOND) OF CONTRACTS (1981) § 202(1) ("RESTATEMENT") ("Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.").  There is also no indication in the record that Plaintiff understood that the notice period in the March 25, 2003 termination letter conflicted with the notice period required by the lease.  *See DeMarco Durzo II*, 69 Fed. Cl. at 272; *see also* Gov't Mot. Recons. at 4 ("[T]he Court has correctly observed that the issue of the 'match' between the lease and the termination notice was not previously raised by the parties.  This is because it was <u>never</u> raised by plaintiff in any correspondence to the contracting officer or in this lawsuit.") (emphasis in original); RESTATEMENT § 201(1) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with

7

that meaning."). Therefore, the court does not discern any reason to hold that the Government would have intended the letter to be interpreted differently than the similar contract provision.

Moreover, a "day-of-the-act-excluded" rule conforms to common language usage. *See* WILLISTON § 34:6 ("Time is often crucial in contracts, and courts have often looked to custom and usage to establish the meaning of time-related terms in a contract."); RESTATEMENT § 202(3)(a) ("[W]here language has a generally prevailing meaning, it is interpreted in accordance with that meaning[.]"). For example, when someone speaks of "a week from Tuesday" they are generally understood as referring to the following Tuesday. If one counted seven days from Tuesday by counting Tuesday as day one, they would find that "a week from Tuesday" works out to the following Monday. That is certainly not the common understanding. Therefore, a "day-of-the-act-excluded" rule is consistent with the language of the lease termination provision, the language of the termination letter, if interpreted by applying principles of contract law, as well as common usage of language. The court sees no reason why the GSA did not intend the same.

In the alternative, the Government contends that, even if the court finds the notice period recited by the termination letter to be incorrect, the termination should still be effectuated on the date specified in the lease. *See* Gov't Mot. Recons. at 3-5. The court finds support for this proposition. In *Camalier & Buckley-Madison, Inc.* v. *Madison Hotel, Inc.*, 513 F.2d 407 (D.C. Cir. 1975), a defendant landlord appealed a judgment of liability for wrongful eviction, trespass, and breach of contract. The United States District Court held that the landlord's termination letter was invalid because it gave less than five days notice of termination as required by the lease. *Id.* at 413. Accordingly, that trial court held the eviction was unlawful, despite the fact that the tenant was not actually evicted until "well outside the five-day notice period." *Id.* at 417. The United States Court of Appeals for the D.C. Circuit reversed, holding that "a timely notice to terminate a tenancy need not specify the terminal date," and summarized the issue as "whether [an] otherwise valid notice of termination was rendered nugatory merely because it unnecessarily stated a terminal date earlier" than the end of the notice period required by the lease. *Id.* Since the letter served "simply the mechanistic function of setting in motion a period [specified in the lease] at the expiration of which the parties relationship would cease," the effect of the letter was not vitiated solely because it recited the wrong termination date. *Id.* at 419.

Following the reasoning in *Madison Hotel*, the March 25, 2003 termination letter set in motion the notice period specified in the lease. As a matter of law, the lease defined May 24, 2003 as the termination date. Therefore, even if GSA intended to propose an earlier termination date, that intention is irrelevant. The letter sets in motion the notice period, as defined by the lease. Following this rationale, since the lease-defined notice period concluded on May 24, 2003, and the Government paid rent through the end of June 2003, the Government fulfilled its obligations under the lease.

Only genuine disputes of material facts *that might affect the outcome of the suit* will preclude entry of summary judgment. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") (emphasis added). The Government has argued persuasively that since the

March 25, 2003 Termination Notice effectively exercised the lease's early termination option, the difference in language between the Termination Notice and the lease should not be material to the outcome of this suit. On reconsideration, the court concurs.

Accordingly, the court grants the Government's Motion for Reconsideration and enters summary judgment on Count I for the Government.

With respect to Count III, however, the court determined that if the March 25, 2003 termination notice was a proper exercise of the Government's early termination option, a taking could have accrued as of May 25, 2003, the first day after the conclusion of the notice period, if the Government continued to occupy the property. *See DeMarco Durzo II*, 69 Fed. Cl. at 276. The record however, does not establish when the Government ceased to occupy the premises, because of the dispute regarding the removal of certain government property from the premises. *Id*. Without proof of the Government's absolute vacation of the premises on May 25, 2003, Plaintiff has a viable takings claim, although the amount in dispute may be *de minimus*. Therefore, the court is scheduling a status conference on November 21, 2006 at 2 p.m. to ascertain whether this remaining issue may be resolved by the parties.

**IT IS SO ORDERED.**

      s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**